**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **STATE OF OHIO, ex rel.** | ) | Civil Action **2:22-cv-02700** |
| **ATTORNEY GENERAL** | ) | |
| **DAVE YOST** | ) | Chief Judge **Algenon L. Marbley** |
| | ) | Magistrate Judge **Kimberly A. Jolson** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **STIPULATION AND ORDER** |
| | ) | **REGARDING DOCUMENT** |
| **AARON MICHAEL JONES, et al.** | ) | **PRODUCTION** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**I.   PURPOSE**

This Stipulation and Order Regarding Document Production ("Protocol") shall govern the production of all documents, testimony, exhibits, electronically stored information ("ESI"), and any other materials and information (including, to avoid any ambiguity, any copies, summaries, or derivations thereof) produced by the parties during discovery in the above-captioned Action.

**II.   COOPERATION**

The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Protocol or if compliance with such material aspect would be unreasonable, a reasonable time before the date of production, such party shall inform the Requesting Party in writing as to why compliance with the Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the Protocol unless it has conferred with other affected parties.

### III. GENERAL PROVISIONS

a. Unless otherwise agreed, production of all documents, including ESI, shall conform to the protocol set forth herein. However, a party who previously has produced documents (for example in connection with a prior litigation or a government investigation) may produce such documents in the same format that such documents were previously produced.

b. If a party producing documents and/or responding to a request for production ("Responding Party") objects to a request for production in full or in part, the Responding Party shall not be under an obligation to make any production of the objected-to material until after the parties have met and conferred, and the objections are resolved either by agreement of the parties or by the Court. However, a Responding Party's partial objection to a request for production shall not justify any delay in production of documents that are responsive to any unobjected to portion of a request for production or other outstanding requests for production.

### IV. PROPORTIONALITY

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed R. Civ. P. 26(b)(1).[1] This includes identifying appropriate limits to discovery, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

**V.     LIAISON**

The parties will identify liaisons to each other by January 13, 2022 who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**VI.    PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that only ESI created or received between 07/07/2017 and present will be preserved.

**VII.   SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

   i)  Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading

3

        Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. The parties are willing to meet and confer if exceptional circumstances arise relating to specific discovery requests for which common system files and application executable files might be relevant.

  ii) A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across custodians and within each custodian. A Producing Party will not seek to deduplicate: (1) hard copy documents; (2) "loose" electronic documents (e.g., documents located on a Custodian's local drive) against versions of the document that are attached to emails; or (3) email attachments in one family against email attachments in another family.

  iii) If applicable, no provision of this Order affects the inspection or production of source code.

    **1. Use of Search Terms and Objections.**

Should a Responding Party elect to search its ESI by using search terms, it shall identify such search terms to the party requesting discovery ("Requesting Party") no later than three weeks after receiving the discovery request. Two weeks after search terms are identified to the Requesting Party, the parties shall exchange any objections to the proposed search terms. The parties shall meet and confer concerning any objections to the proposed search terms within four weeks after receiving the objections. If after meeting and conferring, the parties remain at an impasse concerning the search terms to be used, they will present the issue to the Court.

A Responding Party's election to search its ESI by using search terms shall not permit a Responding Party to withhold from production responsive documents that it becomes aware of as part of its efforts to locate and produce responsive ESI.

If a search term query returns an email or an attachment to an email that is responsive and non-privileged, both the email and any attachment(s) must be produced.

2. **Scope of Search.**

Each party shall make a reasonable and diligent effort to search for and produce all responsive, non-privileged ESI from the party's reasonably accessible email systems, instant messaging systems, mobile phone app messaging systems, telecommunications applications that include messaging features systems, social media communication and/or messaging systems, common shared network drives, and active internet-based storage locations and repositories and any relevant legal hold repositories. If a party identifies a shared repository from which it cannot collect data due to the nature of its organization in a database or its voluminous nature, that party will propose a reasonable method for collection of that data to the opposing party or will present arguments regarding its non-relevance, duplication of other sources or any other arguments related to whether the burden of collection and review outweighs the benefit and the parties will confer in good faith about these issues and attempt to reach resolution.

The parties will search for or collect any ESI from non-networked folders or locations on any workstations, desktop computers, or laptop computers, and, based on reasonable and diligent investigation by the Responding Party, the personal or home desktop computer or laptop computer of any employee or consultant—or from any non-networked storage devices, floppy disks, external hard drives, CDs, DVDs, removable media, thumb drives, PDAs, mobile phones, smart phones, or other wireless communication devices. The parties need not search or produce materials retained primarily for back up or disaster recovery purposes, except in cases where relevant data has been identified and is known to exist on reasonably available back-up media,

for which the original source data has been purged or is otherwise no longer accessible as it was originally maintained. Notwithstanding the foregoing, the parties reserve the right to seek discovery from additional ESI repositories, including, but not limited to, back-up media.

## VIII. RESPONSIVENESS

With respect to ESI, a Party's obligation to conduct a reasonable search for documents in response to any request for production shall presumptively be satisfied by reviewing documents that are identified through the procedure described in the Protocol. However, if a Responding Party knows of or discovers any non-privileged ESI or hard copy documents responsive to any requests for production, independent of its search under the Protocol, the Responding Party must produce such responsive ESI, documents or other material. Furthermore, should a Requesting Party identify specific and ascertainable classes of documents that it has a good faith basis to believe are in the possession, custody or control of the Responding Party, it may request such documents and the opposing party shall consider such request in good faith.

The fact that a document is captured by a search authorized pursuant to this Protocol does not mean that such document is responsive to any request for production or otherwise relevant to this action. The scope of documents to be produced shall be governed by the Federal Rules of Civil Procedure, Court Order, this Protocol, any requests for production, the pertinent objections and responses thereto, and any written agreements between the parties.

## IX. FORMAT OF PRODUCTION OF HARD COPY DOCUMENTS

a. *TIFFs.*

Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions

should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.

b. *OCR Text Files.*

Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document. Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by. txt. OCR text files should be provided in a self-identified "Text" directory. To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.

c. *Database Load Files/Cross-Reference Files.*

A Concordance image and data load file (i.e., OPT and. DAT files) must be delivered with the requested fields and metadata using standard Concordance delimiters. Image and data load files should be provided in a self-identified "Data" folder.

d. *Coding Fields.*

Absent special circumstances, documents should be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttch, (4) EndAttch, and (5) Custodian. Custodians should be identified using the convention "last name_first name." Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions.

e. *Bates Numbering.*

Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire

7

production (i.e., padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

f. *Audio and video files.*

Audio and video file types not specifically discussed elsewhere should be preserved and discussed between the parties in advance of production to determine the optimal format of production.

g. *Other hard copy requirements.*

Special attention should be paid to ensure that hard-copy documents are produced as they are kept, reflecting attachment relationships between documents and information about the file folders within which each document is found. In addition, multi-page documents must be produced as single documents (i.e., properly unitized) and not as several single-page documents. Where color is required to interpret the document, such as hard copy photos, and certain charts, that image MUST be produced in color. These color images are to be produced as .jpg format. Hard-copy photographs should be produced as color .jpg, if originally in color, or grayscale .tif files if originally in black-and-white.

X.  **FORMAT OF PRODUCTION OF ESI**

The parties agree to produce electronic documents electronically, using customary ESI production methods described more specifically below. Electronic documents include word-processing documents, spreadsheets, presentations, and all other electronic documents not specifically discussed elsewhere. These documents should be produced as image files with related searchable text, metadata and bibliographic information and, to the extent required below,

with links to the original native file. The native file documents should be named per the BEGBATES#.

a) The following file formats should be produced in their native forms:

- Any and all audio or visual file types required to be produced pursuant to this Protocol.

- For Excel Spreadsheets, .XLS and .XLSX., and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files).

- For PowerPoint Presentations, .PPT and .PPTX

- For Microsoft Access Databases, .MDB and .ACCDB*

- *- Structured data productions should be discussed between the parties in advance of production to determine the optimal format of production.

- Black-and-white Group IV Single-Page TIFFs (300 DPI). Color images should be provided in .jpg format when color is necessary.

- Image file names should match the page identifier for that specific image and end with the .tif (or .jpg if needed) extension. Example: ACME-ABC-0003072.TIF.

- File names cannot have embedded spaces, commas, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention. (, & \ / # + % ! : * ? " < > | ~ @ ^).

- Any encryption or password protection will be removed from all native format files produced when possible.

b) All hidden text (e.g., track changes, hidden columns, hidden slides, mark-ups, notes) shall be expanded and rendered in the extracted text file. For files that cannot be expanded linked native files shall be produced with the image files.

c) All embedded objects (e.g., graphical files, Word documents, Excel spreadsheets, .wav files) that are found within a file shall be produced so as to maintain the integrity of the source document as a single document. For purposes of production the embedded files shall remain embedded as part of the original source document. **Hyperlinked files must be produced as separate, attached documents.**

d) All image-only files (non-searchable .PDFs, multi-page TIFFs, screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text, metadata, and identifying information.

e) Proprietary file types, such as those generated by financial or graphic design software, or file types from non-PC or non-Windows based systems (e.g., Apple, UNIX, LINUX systems), should be discussed between the parties in advance of production to determine the optimal format of production.

f) Archive file types (e.g., .zip, .rar) must be uncompressed for processing. Each file contained within an archive file should be produced as a child to the parent archive file. If the archive file is itself an attachment, that parent/child relationship must also be preserved.

g) Email and other electronic messages (e.g., instant messages (IMs)) should be produced as image files with related searchable text, metadata and bibliographic information. Depending on how the company's systems represent names in email messages or IMs, a table of names or contact lists from custodians may be required. Each IM conversation should be produced as one document. Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. Production of these native files should be

discussed in advance between the parties. Electronic phone records should be discussed between the parties in advance of production to determine the optimal format of production.

h) The parties will produce extracted metadata for each document and include the following configuration and the fields shown in the subsequent table.

- Field Separator ¶ (ASCII 020)
- Text Qualifier þ (ASCII 254)
- Substitute Carriage Return or New Line in data ® (ASCII 174)
- Multi-value separator (Do Not Follow with Space) ; (ASCII 059)
- Date format DD.MM.YYYY (date type fields only)
- Time format HH:MM:SS in 24-hour format (e.g., 04:32 pm formatted to 16:32:00 – Do not include AM, PM, or Time zone indicators).
- There should be one line for every record in the load file. A carriage return and line feed (CRLF) must appear at the end of each record and ONLY at the end of each record.
- The first row of each metadata load file should be a header row containing the field names. Field names must match Ohio Attorney General Metadata Table field names.
- All requested fields should be present in the metadata load file whether data exists or not. Field order must remain consistent in subsequent productions.

| Field Name | Field Description |
| --- | --- |
| VOLUMENAME | Production volume number (e.g., ABC001-001) |
| BEGDOC | Start Bates (including prefix) -- No spaces or special characters |
| ENDDOC | End Bates (including prefix) - No spaces or special characters |

| | |
|---|---|
| ATTACHRANGE | Range of the BEGDOC value of the parent record to the ENDDOC value (including prefix) of the last child record (for example, ABC-JD-00001201 ABC-JD-00001220); populated for all documents in the group. Empty if the record is NOT in family grouping |
| BEGATTACH | Starting Bates of attachment range |
| ENDATTACH | Ending Bates of attachment range |
| PARENTBATES | Parent record's BEGDOC#, including prefix (populated ONLY in child records) |
| CHILDBATES | Child document list: BEGDOC# of each child, separated by semicolons [;] (populated ONLY in parent records) |
| NUMPAGES | Page count |
| REDACTED | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the Document is redacted. Otherwise, blank. |
| CUSTODIAN | Custodian(s) / source(s) - format: Last, First or ABC Dept |
| DOCTYPE | Type of document, such as "Email" or PDF. |
| TIMEZONE | The Time Zone from which the native file was collected. |
| FROM | Author of the Email or Calendar item (as formatted on the original) |
| TO | Recipients of the Email (as formatted on the original) |
| CC | Names of the individuals who were copied on the Email (as formatted on the original) |
| BCC | Names of the individuals who were blind-copied on the Email (as formatted on the original) |
| SUBJECT | Email or calendar subject |
| DATESENT | Date the Email was sent. Format: DD.MM.YYYY |
| | Time Email was sent – Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; time zone indicators cannot be included) |

12

| | |
|---|---|
| TIMESENT | |
| DATERECEIVED | Date Email was received.  Format: DD.MM.YYYY |
| TIMERECEIVED | Time Email was received. Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; time zone indicators cannot be included) |
| DATECREATED | The date the file was created, if available. DD.MM.YYYY |
| TIMECREATED | The time the file was created if available. Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; time zone indicators cannot be included) |
| HEADER | The internet header information for Email sent through the internet; |
| INTERNETMSGID | Globally unique identifier for a message which typically includes messageid and a domain name. Example: <0E6648D558F338179524D555@m1p.innovy.net |
| MESSAGEID | Proprietary email database/mailstore/post office file associated with centrally managed enterprise email servers. Microsoft Outlook PST EntryID, the UniqueID (UNID) for Lotus Notes, equivalent value for other proprietary mailstore formats. |
| CONVERSATIONINDEX | Email Thread Identification |
| IMPORTANCE | Email flag indicating priority level set for message |
| DATESAVED | Date native file was last modified.  Format: DD.MM.YYYY |
| TIMELASTMODIFIED | The time the native file was last modified, if available. Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; time zone indicators cannot be included) |
| ORGANIZATION | Company field extracted from the metadata of a native file |
| AUTHOR | Author field value extracted from the metadata of a native file |
| FOLDERLABEL | Email folder path (sample: Inbox\Active); or Hard Copy folder/binder title/label |
| FILENAME | Original filename of electronic document (E-doc only) |

13

| FILEPATH | File path to native file as it existed in original environment |
|---|---|
| NATIVELINK | File path location to the current native file location on the delivery medium |
| | |

    i) Each production must have a unique VOLUMENAME.

- The VOLUMENAME should increase sequentially with each subsequent production.
- Load File media should be arranged with a folder named with the VOLUMENAME.
- Under the VOLUMENAME folder, the production should be organized into 4 subfolders:

    1) DATA (should contain metadata, DAT, OPT, etc. files)

    2) IMAGES (may contain subfolders)

    3) NATIVES (may contain subfolders, containing linked native files)

    4) TEXT (may contain subfolders, with document-level text files)

    j) Parent-child relationships (the association between e-mails and attachments) will be preserved. E-mail attachments will be consecutively produced with the parent email record.

## XI. PHASING

    a. When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI.

    b. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**XII. ENCRYPTION**

To maximize the security of information in transit, any media on which documents are produced shall be encrypted by the producing Party. The producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**XIII. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(B), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Disclosures among a party's attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure. A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection.

b) Documents redacted pursuant to any claim of privilege will be designated in the REDACTED field as described in the Metadata Table. Appropriately redacted searchable text (OCR of the redacted images is acceptable), metadata, and bibliographic information must also be provided.

c) Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**XIV. PRIVILEGE LOG**

a) If a party reasonably determines that one or more responsive documents are not

discoverable because it is subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall use reasonable efforts to produce a log for each document or each category of documents withheld for privilege from that production.

b) Communications involving counsel or experts retained for the purpose of this litigation that post-date the filing of the first-filed complaint need not be placed on a privilege log.

c) Any and all documents that contain redacted contents which are not discoverable on the basis of a recognized Privilege will bear one, or more, of the following stamps:

    i) Attorney-Client Privileged;

    ii) Work-Product;

    iii) Privileged – Other.

**XV. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS ORDERED** that the foregoing Agreement is approved.

Date: February 6, 2023          /s/ Kimberly A. Jolson
                                                                  KIMBERLY A. JOLSON
                                                                   UNITED STATES MAGISTRATE JUDGE

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:  February 2, 2023                  *s/* Erin B. Leahy
                                          ERIN B. LEAHY, Trial Attorney

                                          *s/* Christopher J. Belmarez
                                          CHRISTOPHER J. BELMAREZ, Trial Attorney

                                          *Counsel for Plaintiff*


Dated: February 2, 2023                   s/ Justin Whittaker by s/ *Erin Leahy per email auth.*
                                          JUSTIN WHITTAKER, Trial Attorney

                                          s/ M. Candice Crosby by s/ *Erin Leahy per email auth.*
                                          M. CANDICE CROSBY, Pro Hac Vice

                                          *Counsel for Defendants*
                                          **Roy Melvin Cox, Jr.**
                                          **Julie Kathryn Bridge**