**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**STATE OF OHIO, ex rel OHIO ATTORNEY**
**GENERAL DAVE YOST,**

        **Plaintiff,**

   **v.**                            **Civil Action 2:22-cv-2700**
                                       **Judge Algenon L. Marbley**
                                       **Magistrate Judge Kimberly A. Jolson**

**AARON MICHAEL JONES, et al.,**

        **Defendants.**

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff's Motion for Sanctions is before the Court. (Doc. 174). For the following reasons, the Undersigned **RECOMMENDS** that the Motion be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

As the Court summarized previously, this case is about robocalls. (*See generally* Doc. 124). Plaintiff the State of Ohio, *ex rel.* Attorney General Dave Yost alleges that Defendants "acting individually and collectively through a common enterprise, have participated in an unlawful robocall operation that bombarded American consumers with *billions* of robocalls." (Doc. 1 at 4 (emphasis in original); *see id.* at ¶¶ 11–32 (naming fourteen corporate Defendants and eight individual Defendants)). Plaintiff brings the action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g); the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(a), for Defendants' violations of Federal Trade Commission's ("FTC") Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; the Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Rev. Code § 1345.07; and the Ohio Telephone Solicitation Sales Act ("Ohio TSSA"), Ohio Rev. Code § 4719.12. (Doc. 1 at ¶¶ 1, 157–200). Relevant here, Plaintiff alleges that Defendant Roy Melvin Cox, Jr. is an actual or de facto owner, officer, or member of the corporate Defendants. (*Id.* at ¶ 26).

Plaintiff first brought discovery disputes to the Court in October 2024. (Doc. 112). Plaintiff represented that Defendant Cox, through his counsel, failed to respond timely to discovery requests. (*Id.* at 7). The Court ordered the parties to confer. (Docs. 113, 124). Then, Defendant Cox's attorneys filed a motion to withdraw. (Doc. 125). The Court granted the motion and allowed Defendant Cox time in which to secure new counsel. (Doc. 133). When Cox provided notice that he wished to proceed without the assistance of counsel, the Court again ordered the parties to confer. (Docs. 141, 142). After many conferences between Cox and Plaintiff's counsel, some disputes remained. (Docs. 146, 150, 152, 154). Plaintiff filed an amended motion to compel, which in part alleged that Defendant Cox destroyed or altered discovery and provided Plaintiff with false information. (Doc. 158). The Court granted the motion. (Doc. 162). But problems persisted.

On May 19, Plaintiff provided notice that Defendant Cox did not comply with the Court's order that he must produce all documents in his possession, custody, or control responsive to Plaintiff's discovery requests. (Doc. 167; *see also* Doc. 162 at 6). The Court again ordered him to do so. (Doc. 168). Then Plaintiff filed a status report bringing further allegations of Defendant Cox destroying or altering discovery in his possession, custody, or control. (Doc. 174). Because the filing also asked for sanctions, the Court construed the status report as a Motion for Sanctions and set a briefing schedule. (Doc. 175). Defendant Cox responded, and this matter is ripe for review. (Doc. 176, 177).

## II.    STANDARD

Federal Rule of Civil Procedure 37 governs Plaintiff's Motion. The Rule allows for sanctions where a party "fails to obey an order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2)(A). Sanctions can include designating facts in favor of the non-offending party, prohibiting the introduction of evidence at trial, striking pleadings, dismissing the action, entering

a default judgment, and treating the offending conduct as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

Additionally, Rule 37(e) states that "if electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court may take appropriate responsive measures. Fed. R. Civ. P. 37(e). If the Court finds "prejudice to another party from the loss of information, [it] may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Alternatively, if the Court finds that "the party acted with the intent to deprive another party of the information's use in the litigation," the Court can presume the information was unfavorable to the offending party, instruct the jury to presume the information was unfavorable to the party, or enter a default judgment. Fed. R. Civ. P. 37(e)(2).

## III. DISCUSSION

While on the whole Defendant Cox's discovery cooperation has been lacking, Plaintiff's Motion for Sanctions does not support the sanctions requested. Nonetheless, because the Undersigned finds that Plaintiff has been prejudiced by Defendant Cox's spoliation of WhatsApp messages with Defendant Bridge, some sanctions are recommended.

### A. Defendant Cox's Discovery Efforts

Obtaining responsive discovery from Defendant Cox has been like pulling teeth. As alluded to earlier, problems first arose when Plaintiff served discovery requests upon Cox in September 2024. (Doc. 112 at 1). Despite at least one extension to the production deadline, Cox failed to cooperate. (*Id.* at 5–6). In October when Plaintiff filed a motion to compel that discovery, Defendant Cox still "ha[d] produced nothing." (*Id.* at 8). The Court ordered the parties to confer

several times, including after Cox provided notice that he wished to proceed without the assistance of counsel.  (Docs. 113, 124, 142).

Finally, in February 2025, it seemed like Cox would attempt to cooperate.  (Doc. 146 (reporting the parties conferred)).  But, according to Plaintiff, Cox maintained that he "had no responsive records . . . pertaining to his involvement with any of the acts alleged in the Complaint." (Doc. 146 at 2 (also stating Cox produced partial written responses and a handful of documents)). And Cox had "never heard of" or had "no involvement with" several of the corporate Defendants in this case.  (*Id.* at 3 (("I never had any documents, never signed any documents.")).  Over the next few weeks, Plaintiff became concerned that Defendant Cox "was intentionally withholding evidence and information, had made false statements about his relationships with other defendants in the case, and had not truthfully represented the scope of documents he both held and knew to exist."  (Doc. 158 at 4; *see also* Doc. 150).

When the Court granted Plaintiff's motion to compel Cox to turn over responsive discovery, the Court also ordered Cox to, if responsive records were no longer in his possession, "identify 1) whether the responsive records ever existed; 2) where they were stored; and 3) approximately when they were destroyed."  (Doc. 162 at 7; *see also* Doc. 168 at 3 (reordering the same thing)).  The Court elaborated on this order, explaining "[i]f Defendant Cox ever had responsive documents in his possession that he cannot now produce, he must tell Plaintiff and the Court all he can about the documents."  (Doc. 162 at 7).  But according to Plaintiff, Cox has failed to comply with this order and destroyed responsive discovery.  (Doc. 174).

Beginning with the latter, Plaintiff alleges Cox destroyed relevant communications with co-Defendants and possibly even relevant corporate records.  (*Id.* at 5).  For instance, Cox previously acknowledged he deleted WhatsApp messages with at least one co-Defendant.  (Doc.

4

174 at 3; Doc. 174-1 at 1–2; Doc. 150 at 4, 7; *see also* Doc. 158-2 at 2, 13 (request for production requesting all communications between Cox and any of the individual Defendants during the relevant period)).  Specifically, a WhatsApp message log produced by another Defendant, Julie Bridge, showed Defendant Cox turned on an auto-delete messaging feature in June 2023 for his message thread with her.  (Doc. 150-4 at 3).  The notice of the setting change stated "Roy Cox turned on disappearing messages. New messages will disappear from this chat 7 days after they're sent, except when kept. Tap to change." (*Id.*).  Cox admitted to using the auto-delete feature and "has since changed this setting to retain WhatsApp messages indefinitely for any Defendant." (Doc. 150 at 4, 7 ("Defendant Cox acknowledges that his WhatsApp messages were set to automatically delete after seven days. He has since changed this setting to retain WhatsApp messages indefinitely for any Defendant."); *see also* Doc. 176-7 at 1 (showing Cox changed the auto-delete setting in his Skype conversation with Bridge to delete messages after 24 hours on March 3, 2025, but then turned the setting completely off on March 8)).  Nonetheless, any WhatsApp messages among Bridge and Cox sent between June 9, 2023, and February 13, 2025, appear to be, for the most part, lost to the ether.  (Doc. 150-4 at 3 (showing only three saved messages from August and September 2024); *see also* Doc. 176-6 at 5).  Additionally, Cox modified other messages not subject to the auto-delete feature before turning them over to Plaintiff. (*See* Doc. 176-6 (Cox's submission of the text thread with yellow highlighted messages that he "deleted from [his] WhatsApp with Defendant Bridge"); *compare* Doc. 150-3 *with* Doc. 150-4)).

Plaintiff further states Cox has not disclosed "all he knows" about documents or communications with co-Defendants that are no longer in his possession.  (Doc. 174).  For example, Cox informed the Court that he never "entered or signed any documents related to this litigation" and he "never had access to the Corporate Defendants' books."  (Doc. 150 at 7).  But a

declaration submitted by Cox's co-defendant, June Batista, states that in 2019, Cox "opened an LLC called Tech Direct LLC" using Batista's name. (Doc. 158-4 at 2 (filed in support of Plaintiff's amended motion to compel); *see also* Doc. 1 at ¶ 18 (naming Tech Direct LLC as a defendant in this action)). She further states Cox "did all the paperwork" to open the LLC, filed the paperwork, and had access to the bank account Batista opened under Tech Direct LLC. (Doc. 158-4 at 2). According to Batista, Cox also "asked [her] to sign a banking agreement" which "create[d] a relationship between Tech Direct LLC and . . . Virtual Telecom KFT." (*Id.*; *see also* Doc. 1 at ¶ 15 (naming Virtual Telecom Kft as a defendant in this action)). Plaintiff maintains that this testimony suggests there are "at least some communications" between Defendant Batista and Defendant Cox that Cox has not produced or otherwise explained. (Doc. 174 at 4–5 (stating Defendant Cox turned over only three "personal" emails with Defendant Batista)).

Plaintiff argues that it faces "significant prejudice" because of Cox's destruction of co-defendant communications and his failure to identify "all he knows" about them. (*See generally* Doc. 174). And, as a result, Plaintiff thinks sanctions are appropriate. (*Id.*).

### B. Requested Sanctions

As recompense for Cox's actions, Plaintiff seeks the following rebuttable presumptions in its favor: "1) the communications Defendant Cox destroyed would have shown that Defendant Cox exercised control and de facto ownership over his corporate co-defendants; and 2) the communications Defendant Cox destroyed would show that Defendant Cox recruited, directed and/or controlled the actions of Defendants Livia Szuromi, Andrea Horvath, Julie Bridge, and June Batista." (Doc. 174 at 5–6).

Plaintiff initially grounded this request for sanctions in Rule 37(b)(2)(A). As previously explained, Rule 37(b) allows for the Court to direct that certain facts be taken as established if a

party is found to have violated a discovery order.  (Doc. 174 at 3).  The specific order Plaintiff alleges Cox to have violated was that Cox must identify whether records responsive to Plaintiff's discovery requests ever existed; where they were stored; and approximately when they were destroyed.  (Doc. 162 at 7).

However, Plaintiff's motion is better construed as a request for sanctions under Rule 37(e), which is the part of the rule directed at a party's failure to preserve electronically stored information.  Fed. R. Civ. P. 37(e).  The portion of Plaintiff's Motion requesting sanctions almost wholly references Cox's alleged destruction of co-defendant communications.  (*See, e.g.,* Doc. 174 at 5 ("Given the significant prejudice Plaintiff faces as a result of Defendant Cox's destruction of co-defendant communications, Plaintiff asks this court grant the following rebuttable presumptions . . . .")).  In fact, in responding to the Motion, Defendant Cox, correctly in the Undersigned's view, names Rule 37(e) as the operative legal standard.  (Doc. 176 at 1–2).  Perhaps also recognizing this subsection's applicability, Plaintiff switches gears in its reply.  (Doc. 177 at 1 (arguing it has demonstrated sanctions are warranted under Rule 37(e)(2))).  Finding that Rule 37(e) is the better vehicle for Plaintiff's requested relief, the Undersigned considers whether sanctions are appropriate under Rule 37(e) only.

## C.    Appropriate Sanctions

To support a motion for sanctions under Rule 37(e), Plaintiff must first demonstrate that the ESI in question should have been preserved, was lost because Cox failed to take reasonable steps to preserve it, and cannot be replaced or restored through additional discovery.  Fed. R. Civ. P. 37(e).  Then, the Court may craft an appropriate sanction if it additionally finds that Cox acted with intent to deprive Plaintiff of the information's use in litigation, or that Plaintiff was prejudiced

by the loss of the information.  *Id.*  Ultimately, the Undersigned finds that Plaintiff met its burden in only some respects.

### 1.    *Rule 37(e) Applicability as to Communications with Bridge*

The Undersigned first considers if sanctions are appropriate under Rule 37 for Defendant Cox's destruction of messages with Defendant Bridge via the WhatsApp auto-delete setting.

### a.    *Preservation of ESI*

Rule 37(e) applies where electronically stored information "should have been preserved in the anticipation or conduct of litigation."  The Undersigned has no trouble finding that Defendant Cox's conversations with Defendant Bridge should have been preserved.  *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" (citation omitted)).  This case was filed on July 7, 2022, and Defendant Cox waived service on July 29, 2022.  (Docs. 1, 4).  Defendant Cox knew or reasonably should have known from this latter date that he was required to preserve electronically stored information relevant to this matter.  And conversations between the co-defendants obviously fall under the umbrella of evidence that is relevant to litigation.  *Cf.* Fed. R. Civ. P. 26(b) (allowing discovery regarding any non-privileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case)); (*see also* Doc 158-2 at 13 (request for production issued September 5, 2024 requesting all communications between Cox and the individual Defendants, including Bridge, during the relevant period)).  Yet, by Cox's own admission, he enabled the setting on his WhatsApp account to delete messages with Defendant Bridge.  (Doc. 150 at 7).

8

While Cox urges that the "ephemeral settings were enabled before any litigation hold was issued" (Doc. 176 at 3 (cleaned up)), this is clearly not true for his messages with Defendant Bridge based on the record.  The WhatsApp message thread Cox submitted shows he turned on the setting on June 9, 2023.  (Doc. 176-6 at 5; *see also* Doc. 150-4); *cf. Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 818–19 (N.D. Ohio 2024) (finding that where a party had a duty to preserve text messages, the fact that the relevant discovery request for ESI came years later had "no legal significance").  Because the Undersigned finds that the duty to preserve arose no later than the day Cox waived service, July 29, 2022, he was required to preserve his WhatsApp messages with Defendant Bridge from at least that date on.

### b.  *Reasonable Steps to Preserve*

Having found Cox had a duty to preserve his communication with Defendant Bridge, the Undersigned now considers whether the ESI was lost because Cox failed to take reasonable steps to preserve it. Fed. R. Civ. P. 37(e).  Again, this is not a difficult finding to make.  Adjusting a setting to delete ESI is clearly failing to take reasonable steps to preserve that same ESI.  *Cf. Schnatter v. 247 Grp., LLC*, No. 3:20-cv-00003BJBCHL, 2022 WL 2402658, at *10 (W.D. Ky. Mar. 14, 2022) (finding a plaintiff had a reasonable duty to preserve text messages when he "deleted every text message he sent and received since his preservation duty was triggered" in accordance with his years-long "personal practice"); *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 999 (N.D. Ohio 2016) ("Once the duty to preserve attaches, a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents.").  Further, there is no evidence in the record that the messages deleted between June 2023 and February 2025 were otherwise backed up or stored in another electronic location.  And ultimately, Cox does not argue he took steps to preserve his

conversation with Defendant Bridge.  (*See generally* Doc. 176).  Therefore, the Undersigned concludes that Defendant Cox failed to take reasonable steps to preserve his messages with Defendant Bridge.

> *c.*    *Restoration or Replacement of ESI*

The Undersigned must next consider whether the lost ESI can be restored or replaced through additional discovery.  Fed. R. Civ. P. 37(e).  Defendant Cox argues that it can.  He asserts that Plaintiff may use discovery tools such as depositions to "build [the] case."  (Doc. 176 at 6).  However, Cox's argument misses the mark.  Even if Cox or Bridge could testify as to the contents of some lost messages, their testimony "cannot compensate for [Plaintiff's] inability to obtain a complete record" of the WhatsApp messages themselves.  *Schnatter*, 2022 WL 2402658, at *12 (citation modified).  What's more, Defendant Cox—for the first time in this litigation—claims that he has medically induced memory problems.  (Doc. 176 at 2).  It is odd that Cox suggests relying on his testimony to replace the lost WhatsApp messages if he indeed has a memory impairment.

At base, the lost ESI includes potentially over a year and a half of messages.  Though Cox argues that, to his knowledge, "WhatsApp was not used for the business operations at issue [in the Complaint]," (Doc. 176 at 4), Plaintiff is not expected to take his word for it.  And there is no other discovery method available that can fully test Cox's assertion that none of the lost WhatsApp messages matter for this litigation.  Nor is Plaintiff "required to expend unlimited resources turning over every stone that [Cox] points to" that could possibly recreate some information contained in the messages.  *Schnatter*, 2022 WL 2402658, at *12.  For this reason, the Undersigned finds that the electronically stored information cannot be restored or replaced through additional discovery.

Because Plaintiff has made the threshold showing that Rule 37(e) applies, the Undersigned must now consider what sanctions, if any, are appropriate.

### d.    Intent to Deprive under Rule 37(e)(2)

To impose a rebuttable presumption that lost electronically stored information was unfavorable to the offending party, as Plaintiff requests, the Court must find that the Cox "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "A showing of negligence or even gross negligence will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016). "To find that a party acted with intent to deprive another of evidence, a court must find by clear and convincing proof that the party acted 'with the specific purpose of gaining an advantage in the present litigation.'" *Safelite Grp., Inc. v. Lockridge*, No. 2:21-CV-4558, 2024 WL 4343038 (S.D. Ohio Sept. 30, 2024) (citation omitted). Still, the Court is not required to impose the sanctions described in Rule 37(e)(2) even if it finds intent to deprive another party of the lost information's use in litigation. *Id.*; *see also Buddenberg*, 711 F. Supp. 3d at 817–18. Because courts are expressly cautioned against using the measures specified in Rule 37(e)(2) where inappropriate, courts have available to them other remedies specified in Rule 37 to "fit the wrong." Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment.

Plaintiff's intent argument is sparse. Plaintiff merely asserts that Defendant Cox "intentionally" set his WhatsApp messages with Defendant Cox to auto-delete. (Doc. 174 at 4; *see also* Doc. 177 at 1–2). Based on record, the Undersigned certainly does not doubt that Cox intentionally flipped on the auto-delete setting. *Cf. Safelite Grp., Inc.*, 2024 WL 4343038, at *6 ("It is not plausible that a modern, professional smartphone user . . . could carry on for four years without realizing that his text messages disappeared after 30 days."). But what matters is the subjective intent behind the setting change—whether Cox turned on the auto-delete setting with specific purpose of gaining an advantage in this litigation. Some argument could be made that

11

Cox's subsequent censorship of his produced messages with Defendant Bridge supports an inference of intent. (*See* Doc. 176-6 (highlighting the messages Cox initially "deleted" from his production)). But, ultimately, Plaintiff's gesture at intentionality without more does not satisfy the high bar for the sanctions available under Rule 37(e)(2). *Cf. Elman v. Wright State Univ.*, No. 3:18-CV-358, 2025 WL 755486, at *5 (S.D. Ohio Mar. 10, 2025) ("[T]he absence of any positive evidence of subjective intent to deprive Plaintiff means that relief under Rule 37(e)(2) is unavailable."). And, at any rate, Plaintiff has not sufficiently explained why Cox's spoliation, even if intentional, justifies the rather extreme rebuttable presumptions it requests. Still, the Undersigned considers whether other sanctions are appropriate under another standard.

e.      *Prejudice under Rule 37(e)(1)*

Despite not meeting its burden to show intent under Rule 37(e)(2), the Undersigned finds that that Plaintiff has been prejudiced by the loss of the WhatsApp messages under Rule 37(e)(1). "Prejudice can be properly understood as a party's ability to obtain the proofs necessary for its case . . . which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 WL 2324488, at *6 (E.D. Mich. May 30, 2019), *report and recommendation adopted*, No. 15-13842, 2019 WL 2296913 (E.D. Mich. May 30, 2019). "Establishing prejudice when ESI has been destroyed and the contents are unknown is challenging." *Safelite Grp., Inc.*, 2024 WL 4343038, at *8. Because of this, in certain situations, "placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e), advisory committee's notes to the 2015 amendment. Ultimately, it is within the Court's discretion to determine how to assess prejudice on a case-by-case basis. *Id.*

The Undersigned finds that Plaintiff is prejudiced by Cox's failure to preserve his WhatsApp messages with Defendant Bridge during the course of this litigation.  It is clear from the messages that are in the record that Cox and Bridge used WhatsApp to discuss this matter. (*See* Doc. 176-6 at 1–5 (referencing the Defendants' former attorney and possible discovery methods in 2022 messages), 5–6 (discussing production and litigation strategy in 2025 messages)). And the fact that the record demonstrates Cox and Bridge exchanged WhatsApp messages both before Cox initiated the auto-delete setting and after he supposedly turned it off, leads the Undersigned to conclude that there is a strong likelihood the two exchanges messages between June 2023 and February 2025 that were auto-deleted.  (*See also id.* at 5 (showing a saved message from August 2024 that appears to be sent in response to a message that was deleted)).  Even looking beyond Cox's general duty to preserve in this litigation, any messages during that time were directly responsive to at least one of Plaintiff's discovery requests issued in September 2024.  (*See, e.g.*, 158-2 at 13).  Plaintiff does not have any way to recover these WhatsApp messages, and no other form of discovery can completely restore what was lost.  Plaintiff was entitled to these messages and "is not required to rely on [Cox's] testimony that the messages were unrelated to the issues in this litigation," *Safelite Grp., Inc.*, 2024 WL 4343038, at *8, or that "no responsive messages were deleted" (Doc. 176 at 3).  *See also Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *11 (E.D. Tenn. Nov. 14, 2017) (citation omitted) (stating prejudice can be found where a party must piece to gather information from other sources to recover the relevant discovery).

Because the Undersigned finds that Cox's failure to preserve the WhatsApp messages with Defendant Bridge prejudices Plaintiff, a sanction under Rule 37(e)(1) is appropriate.  A sanction imposed under Rule 37(e)(1) should be "no greater than necessary to cure the prejudice" Plaintiff

suffered.  District courts have broad discretion to design a spoliation sanction that "serves both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650, 652–53 (6th Cir. 2009) (citation omitted).  "Nevertheless, courts must 'ensure that curative measures under subdivision (e)(1)' do not have the effect of those measures (enumerated in subdivision (e)(2)) reserved for use on a finding of intent." *Safelite Grp., Inc.*, 2024 WL 4343038, at *8 (citing Fed. R. Civ. P. 37(e), advisory committee's notes to the 2015 amendment).

In considering the whole record, the Undersigned concludes the following recommended sanction is appropriate to cure the prejudice Plaintiff has suffered but is no greater than necessary. Plaintiff should be permitted to introduce evidence at trial of Defendant Roy Cox's failure to preserve his WhatsApp messages with Defendant Bridge.  Plaintiff may argue for whatever inference it hopes the jury will draw.  Defendant Cox should also be permitted to present evidence on the matter and argue that the jury should not draw any inference from his failure to retain the WhatsApp messages. *Cf. EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 403 (6th Cir. 2020); *Safelite Grp., Inc.*, 2024 WL 4343038, at *8–9; *Schnatter*, 2022 WL 2402658, at *20.

Despite finding this permissive adverse-inference instruction the appropriate sanction for Cox's actions at this juncture, the Court would consider Plaintiff's initial request again based on a more complete record.  In other words, the Undersigned's recommendation does not foreclose Plaintiff from bringing a renewed motion seeking the enumerated rebuttable presumptions in its favor (Doc. 174 at 5), if Plaintiff obtains positive evidence of Cox's subjective intent to deprive it of the WhatsApp messages' use in this litigation.

2.    *Rule 37(e) Applicability as to Communications with Defendant Batista*

Plaintiff's Motion also addresses Cox's communications with Defendant Batista.  (Doc. 174).  Specifically, Plaintiff hypothesizes Defendant Batista's declaration, described above, shows "there would be at least some communications between Defendant Batista and Defendant Cox." (Doc. 174 at 5).  Though not completely clear, Plaintiff seems to infer that Cox destroyed these communications—and related documents—too.  (*Id.*).  However, the current record does not support a finding that electronic communications with Defendant Batista should have been preserved and were lost because Cox failed to take reasonable steps to preserve them.  Unlike with Defendant Bridge, Plaintiff has not presented compelling evidence that Cox used an auto-delete feature in his message threads with Defendant Batista during the time he would have been on notice to preserve such messages.  (Doc. 158-4 at 2 (June Batista's declaration stating she communicated with Cox via WhatsApp "between 2016 and 2019" only)).  Consequently, to the extent Plaintiff grounds the request for sanctions on Defendant Cox destroying electronic communications with Defendant Batista, the Undersigned **RECOMMENDS** that request be **DENIED without prejudice**.

To the extent Plaintiff generally theorizes that Defendant Cox knows more than he has told them about communications with co-Defendants or related documents, those arguments are better presented to a jury.  However, if Plaintiff has further grounds for sanctions based on spoliation of ESI or on Defendant Cox defying a Court order, Plaintiff may bring the appropriate motion.

## IV.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Plaintiff's Motion for Sanctions (Doc. 174) be **GRANTED in part and DENIED in part**.  Specifically, the Undersigned **RECOMMENDS** Plaintiff be **GRANTED** the permissive adverse-inference instruction detailed

above.  The Undersigned **RECOMMENDS** Plaintiff's other requests for sanctions be **DENIED without prejudice**.

IT IS SO ORDERED.

Date:  August 7, 2025                    /s/ Kimberly A. Jolson
                                         KIMBERLY A. JOLSON
                                         UNITED STATES MAGISTRATE JUDGE

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).