## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **STATE OF OHIO,** *ex rel.* | : |
| **ATTORNEY GENERAL DAVE YOST** | : **Case No. 2:22-cv-02700** |
| | : |
| **Plaintiff,** | : **Judge Algenon L. Marbley** |
| | : **Magistrate Judge Kimberly A. Jolson** |
| **v.** | : |
| | : |
| **AARON MICHAEL JONES,** *et al.* | : |
| | : |
| **Defendants.** | : |

### OPINION & ORDER

This matter is before the Court Defendants Roy Melvin Cox, Jr. and Julie Katherine Bridge ("Defendants") Motion for Judgment on the Pleadings (ECF No 115). For the reasons stated below, the Motion is **DENIED**.

## I.    BACKGROUND

This case arises from an alleged robocall scheme that resulted in at least 800 million deceptive call attempts. (ECF No. 1 at 4). The State of Ohio brings this action against the identified individual defendants ("Individual Defendants")[1] and their associated corporate entities ("Corporate Defendants")[2] pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g); the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(a), for violations of the Federal Trade Commission's ("FTC") Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; the Ohio Consumer Sales

---

[1] Aaron Michael Jones, Stacey Yim, Roy Melvin Cox Jr., Julie Kathryn Bridge, June Batista, Jovita Migdaris Cedeno Luna, Livia Szuromi, and Andrea Horvath.

[2] Technologic USA, Inc., Technologic, Inc., Connective MGMT Inc., Virtual Telecom, Inc., Virtual Telecom kft, Davis Telecom, Inc. (a foreign corporation), Davis Telecom, Inc. (a former Wyoming corporation), Tech Direct, LLC, Posting Express, Inc., Sumco Panama USA, Sumco Panama S.A., Mobi Telecom, LLC, Geist Telecom, LLC, and Fugle Telecom, LLC.

Practices Act ("Ohio CSPA"), Ohio Rev. Code § 1345.07; and the Ohio Telephone Solicitation Sales Act ("Ohio TSSA"), Ohio Rev. Code § 4719.12.

According to the Complaint, Defendants, through their lead generation services, delivered prequalified or prescreened leads by initiating robocalls that advertised, or were intended to induce the purchase of, various goods or services when the call recipient met certain criteria. (ECF No. 1 ¶ 34). When possible, Defendants facilitated a live transfer of the consumer to their clients while the individual remained on the line with Defendants or their agents. In doing so, Defendants arranged for vehicle service contract marketers to offer goods or services to consumers in exchange for consideration. (*Id.*).

The Call Originator Defendants[3] allegedly "originated hundreds of millions of robocalls aimed at residents of Ohio." (*Id.* ¶ 35). Each call began with a prerecorded message which prompted the recipient to respond by pressing a number. If the recipient engaged, the Defendants prescreened the call and, when possible, transferred the individual to a paying client seeking sales leads. (*Id.*).

The scheme also involved a network of entities referred to as the Financial Shell Defendants[4] (collectively with the Call Originator Defendants, the "Corporate Defendants"). These entities allegedly obtained bank accounts to facilitate payments from clients, disburse proceeds to the Individual Defendants, and fund services necessary to the continued operation of the alleged robocall enterprise. (*Id.* ¶ 38). While these Financial Shell Defendants were allegedly owned, operated, directed, or otherwise controlled by the Individual Defendants, they were purportedly managed by certain Straw Directors. (*Id.*).

---

[3] Technologic, Inc., Virtual Telecom kft, Davis Telecom,. Inc. (a foreign corporation), Sumco Panama S.A., Mobi Telecom, LLC, Geist Telecom, LLC, and Fugle Telecom, LLC
[4] Technologic USA, Inc., Connective MGMT Inc., Virtual Telecom, Inc., Davis Telecom, Inc. (a former Wyoming corporation), Tech Direct, LLC, Posting Express, Inc., and Sumco Panama USA

The Straw Directors who are identified by name only, signed documents and appeared on FCC filings. Plaintiff's investigation revealed no evidence that these individuals received compensation from the enterprise or even exist. (*Id*. ¶ 41). According to Plaintiff, the use of these Straw Directors "provide[s] clear links between Defendants in the common enterprise and show the interconnectedness of the Defendants." (*Id*.).

On July 7, 2022, Plaintiff filed the Complaint in this action. (ECF No. 1). On November 5, 2024, Defendants Julie Katherine Bridge and Roy Melvin Cox, Jr. jointly filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 115). The Motion has been fully briefed and is now ripe for this Court's review.

## II.     STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion."). The court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks omitted).

The court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (internal quotation marks omitted). The court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. LAW & ANALYSIS

Defendants move for judgment on the pleadings, arguing that Plaintiff's theory of individual liability rests on piercing the corporate veil, but that the Complaint fails to allege sufficient facts to support that claim. (ECF No. 115 at 6). Plaintiff opposes, arguing that Defendants Cox and Bridge may be held individually liable both through veil piercing and through their direct participation in the alleged unlawful conduct. (ECF No. 121 at 14). Plaintiff also asserts liability under a "common enterprise" theory. (ECF No. 121 at 6).

### A. Sufficiency of Allegations Under Rule 8

Defendants argue that they are entitled to judgment on the pleadings because the Complaint fails to specify which Individual Defendant engaged in which unlawful conduct, but instead improperly groups them together. (ECF Nos. 115 at 8; 123 at 2). Group pleading, however, is not inherently deficient. "Collecting defendants under a single defined term is permissible and, on its own, is not a basis for dismissal[.]" *Gold Crest, LLC v. Project Light, LLC,* 525 F. Supp. 3d 826, 835 (N.D. Ohio 2021).

Federal Rule of Civil Procedure 8(a) requires a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 934 (S.D. Ohio 2023). This requirement serves to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (cleaned up).

Whether "group pleading" of defendants violates Rule 8(a) is often dependent on the facts and claims at issue. *Igo*, 652 F. Supp. 3d at 935 (collecting cases). Group pleading may be insufficient where the complaint fails to allege facts showing what each defendant plausibly did to cause harm. *Garrett v. Morgan Cnty. Sheriff's Off.*, No. 1:23CV2011, 2025 WL 2097739, at *27

(N.D. Ohio July 25, 2025). For this reason, "some courts have found 'lumping the Defendants together for the purposes of all allegations fails to give the individual Defendants proper notice of what they have allegedly done wrong.'" *Id*. (quoting *Aaron v. Durrani*, 2014 WL 996471 at * 3 (S.D. Ohio Mar. 12, 2014)). Nonetheless, "where plaintiff plausibly alleges facts showing entitlement to relief for the claimed misconduct" the group pleading is sufficient to give notice. *Id*. (quoting *Gold Crest, LLC v. Project Light, LLC,* 525 F. Supp. 3d 826, 835 (N.D. Ohio 2021)). This includes where "[p]laintiffs have made allegations that multiple [d]efendants have engaged in the same conduct, those allegations are plausible and raise a reasonable expectation that discovery will reveal evidence to support their claims." *Id*.  (quoting *Hale v. Enerco Grp., Inc*., 2011 WL 49545 at *4 (N.D. Ohio Jan. 5, 2011)).

For example, in *Gold Crest*, the plaintiff separately identified the  defendants, then collectively defined those three as the "Corporate Defendants." The complaint explained that they shared business names, addresses, and operations. The plaintiff alleged that the "collectively-defined defendants engaged in conduct" from which the case arose. 525 F. Supp. 3d at 835. The court found that "collecting the three under a defined term then claiming all three are liable for the same misconduct is, at the pleading stage, sufficient to give each of them notice of the claims alleged against them." *Id*.

As in  *Gold Crest*, the Complaint includes various allegations regarding the "Individual Defendants" who are defined as: Aaron Michael Jones, Stacey Yim, Roy Melvin Cox Jr., Julie Kathryn Bridge, June Batista, Jovita Migdaris Cedeno Luna, Livia Szuromi, and Andrea Horvath. (ECF No. 1 ¶¶ 25-32). The Complaint describes the independent conduct of each individual defendant, their role in this case, and their relationship with each other. For example, with respect to Cox and Bridge, the Complaint provides:

Defendant Roy Melvin Cox, Jr. ("Cox" and an "Individual Defendant") is an actual or de facto owner, officer or member of the Corporate Defendants. At times material to this Complaint, acting alone or in concert with others, Cox has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of each Call Originator and Financial Shell Defendants, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of each Call Originator and Financial Shell Defendants, including the acts and practices set forth in this Complaint. Cox resides in Tustin, California.

Defendant Julie K. Bridge ("Bridge" and an "Individual Defendant") is an officer and member of Technologic USA, Virtual US, Davis US, and Mobi Telecom. At times material to this Complaint, acting alone or in concert with others, Bridge has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Technologic USA, Virtual US, Davis US, and Mobi Telecom, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Technologic USA, Virtual US, Davis US, and Mobi Telecom, including the acts and practices set forth in this Complaint. Bridge resides in Upland, California.

(*Id*. ¶¶ 26, 28).

Moreover, Defendant Cox is independently alleged to have received the majority of the proceeds from the alleged common enterprise, acted as a signatory on bank accounts for Corporate Defendants involved in the misconduct, and obtained over $430,000 from those accounts. (*Id*. ¶¶ 99(a)-(h)). Similarly, Defendant Bridge is alleged to have opened financial accounts used in the illegal robocall scheme, signed contracts furthering the operation, and received substantial funds in connection with the scheme. (*Id*. ¶¶ 104(a)-(f)). In addition to these individualized allegations, Plaintiff asserts that the Individual Defendants collectively and knowingly participated in a deliberately complex robocall scheme that violated federal and state telemarketing laws. (ECF No. 1 at 5).

These allegations are sufficiently specific to give Cox and Bridge fair notice of the claims against them and satisfy the pleading standards under Rule 8(a).

Defendants also argue that the allegations are merely conclusions and restate the law, thus, failing to state a claim for relief. (ECF No. 115 at 8; 123 at 2-4). To support this argument, Defendants cite two paragraphs:

> 162. Individual Defendants, at all times pertinent hereto, directly or indirectly, controlled and directed the business activities and sales conduct of at least one of the Call Originator Defendants, causing, personally participating in, benefiting from, or ratifying the acts and practices of at least one of the Call Originator Defendants, including the conduct giving rise to the violations described herein, and are therefore liable for said violation of the TCPA.

> 163. Individual Defendants, at all times pertinent hereto, through their acts and practices, showed no respect for the corporate form in creating, controlling, and directing the business activities and sales conduct of at least one of the Call Originator Defendants, performed these acts or practices with fraudulent intent, and are therefore liable for said violation of the TCPA. [Doc.1, at #43].

(ECF No. 115 at 9). Defendants assert that each Count in the Complaint suffer from these conclusory statements.

While this Court need not accept conclusory and unsupported statements, *Iqbal*, 556 U.S. at 678, that is not the case here. As Plaintiff argues, "Defendants' reading of the Complaint ignores swaths of factual allegation." (ECF No. 121 at 5). The paragraphs cited, for example, allege that Individual Defendants "directly or indirectly, controlled and directed the business activities and sales conduct of at least one of the Call Originator Defendants." This Court further details below the well-pleaded material allegations giving rise to Defendants' liability.

### B. Piercing the Corporate Veil

Under Ohio law, a corporate officer is generally not held liable for the debts or acts of a corporate entity. *State ex rel. DeWine v. Osborne Co.*, 11th Dist. No. 2016-L-091, 2018-Ohio-3109, 104 N.E.3d 843, ¶ 65. Nonetheless, courts may "pierce the corporate veil," so that:

> the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in

such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.,* 67 Ohio St.3d 274, 617 N.E.2d 1075, 1086 (1993)). This Court will address each element in turn.

### 1.    Alter Ego

The first element is the alter-ego doctrine, which applies where, "upon piercing the corporate veil, it appears that a corporation is simply the alter ego of the individual sought to be held liable." *Osborne Co.*, 2018-Ohio-3109, 104 N.E.3d 843, ¶ 65 (internal quotation marks omitted). In such instances, "the corporation is so dominated by the shareholder that it has no separate mind, will, or existence of its own." *Belvedere*, 617 N.E.2d at 1086.

When determining whether this standard has been met, Ohio courts consider a non-exhaustive list of factors, including: "(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s)." *Taylor Steel, Inc.*, 417 F.3d at 605 (quoting *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 602 N.E.2d 685, 689 (Ohio App. 6 Dist.1991)).

Plaintiff's Complaint alleges four alter ego factors: failure to observe corporate formalities; shareholders holding themselves out to be personally liable for certain corporate obligations,

diversion of company funds for personal use; and that the corporation was a façade for the dominant shareholders.

### a. Failure To Observe Corporate Formalities

Plaintiff alleges that the Corporate Defendants engaged in "practices through a maze of interrelated corporations and limited liability companies that have strongly interdependent economic interests, operate under common control, with common actual or de facto officers and/or members, with common business functions, and share business resources typically shared in an office, such as common Internet Protocol ("IP") addresses and the use of commingled funds." (ECF No. 1 ¶ 83). Plaintiff also alleges that the Corporate Defendants "operate with coordinated efforts" as Cox "moved on from litigation against their robocall operating companies or financial shell companies by shutting them down and opening different companies to engage in new, but often strikingly similar, schemes" such that "the corporations and LLCs were created and operated with fraudulent intent, and to allow Defendants to evade liability would allow an injustice to occur." (*Id*. ¶ 113).

Both Cox and Bridge allegedly knowingly directed and controlled the scheme and used tactics "to protect their ill-gotten gains." (*Id*.). Moreover, Plaintiff alleges both Cox and Bridge disregarded corporate formalities by failing to comply with corporate laws or regulations to maintain business registrations. Additionally, Cox and Bridge failed to follow FCC requirements with respect to their telecommunications provider registrations, including some of the Corporate Defendants being listed as inactive by the relevant Secretary of State for failing to maintain registration requirements. (*Id*. ¶¶ 114, 115).

*b. Shareholders Holding Themselves Out To Be Personally Liable For Certain Corporate Obligations*

According to the Complaint, Cox was the signatory on bank accounts for the Corporate Defendants. (*Id*. ¶ 99(c)). He "paid for a cloud server account through his personal PayPal account and IP addresses connected to the cloud server account were used to initiate robocalls via five different VoIP service accounts." (*Id*. ¶ 99(d)). Further, he allegedly used his personal credit card to pay for the domain registration for the website for one of the Corporate Defendants. (*Id*. ¶ 99(h)). Further, Bridge signed contracts allegedly in furtherance of the scheme and opened bank accounts for Corporate Defendants, one of which she identified herself as an "owner with control of the entity." (*Id*. ¶¶ 104(a)-(c)). The Complaint also notes that Bridge, through counsel, responded to a Civil Rule 45 subpoena as President of one of the Corporate Defendants.  (*Id*. ¶ 104(d)).

*c. Diversion Of Company Funds For Personal Use*

Plaintiff also alleges that Cox comingled funds by having Corporate Defendants make payments, on his behalf, for his primary residence and an apartment. (*Id*. ¶ 99(e), (f)).

*d. The Corporation Was A Façade For The Dominant Shareholders*

The Complaint additionally includes allegations that the Corporate Defendants obtained bank accounts that facilitated receiving money to pay proceeds to Cox, Bridge, and the other Individual Defendants.  Moreover, these Corporate Defendants were allegedly "operated, directed, and otherwise controlled" by Cox, Bridge, and the other Individual Defendants while they were purportedly "owned, operated, directed, and otherwise controlled" by others. (*Id*. ¶¶ 38, 40, 83, 84).

Accepting these well-pleaded material allegations as true, these allegations plausibly support the conclusion that the Corporate Defendants were mere instrumentalities of Cox and Bridge. As to Cox, the Complaint includes multiple, well-supported allegations of disregard for

10

corporate formalities, personal use of corporate assets, and operation of the entities as a façade. While the allegations concerning Bridge are less extensive, they still allege specific facts showing her disregard for corporate formalities and her active role in the control and operation of the entities. At this stage, these allegations are sufficient to satisfy the alter-ego element of the veil-piercing analysis under *Belvedere*.

### 2. *Fraud or Illegal Act*

The second element requires that the individual exercised control over the corporation in such a manner as to commit fraud or an illegal act against the party seeking to pierce the corporate veil. *Belvedere.,* 617 N.E.2d at 1086. Courts are instructed to apply this standard "cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Dombroski v. WellPoint, Inc.,* 119 Ohio St.3d 506, 895 N.E.2d 538, 545 (2008). "[D]ominance of and control over a corporation by a shareholder is insufficient, standing alone, to render the shareholder liable for corporate debts." *LeRoux's Billyle Supper Club,* 77 Ohio App.3d at 425, 602 N.E.2d 685 (citations omitted). Rather, there is an emphasis on some wrongdoing which Ohio courts have interpreted to mean a "harmful, unfair, unjust, inequitable, or wrongful act rather than solely a criminal one." *Taylor Steel*, 417 F.3d at 608 (6th Cir. 2005).

Here, Plaintiff alleges a scheme of violating the TCPA, TSR, CSPA, and TSSA through robocalls directed at Ohio consumers. Cox and Bridge are alleged to have exercised control over Corporate Defendants while receiving direct financial benefits from the scheme. (ECF No. 1 ¶ 38). They also allegedly directed, owned, or participated in the companies involved in the misconduct and had knowledge of the wrongful practices, complex scheme, or otherwise participated in and facilitating the scheme. (*Id*. ¶¶ 40, 84).

Additionally, as explained above, Cox allegedly paid for the domain registration and a cloud server used to initiate robocalls. (*Id*. ¶¶ 99(d), (h)). With respect to Bridge, she is alleged to have opened financial accounts for Corporate Defendants which were allegedly used in the illegal robocall operation. (*Id*. ¶¶ 104(a)-(c)). She also allegedly signed contracts in furtherance of the scheme. (*Id*.).

These alleged facts support the inference that Cox and Bridge used their control over the corporate entities to commit the alleged statutory violations. Accordingly, Plaintiff has sufficiently pled the second element.

### 3. *Injury or Unjust Loss*

The final element requires an injury or unjust loss to the Plaintiff from the alleged control and wrongful conduct. *Taylor Steel, Inc*, 417 F.3d at 608.

Here, the State of Ohio brings this action on behalf of its residents, alleging injury from hundreds of thousands of illegal robocalls. (ECF No. 1 ¶¶ 8, 43). These calls allegedly misrepresented the identity and location of the call, as well as the services that could be provided. (*Id*. ¶48). Plaintiff ties this consumer harm to the actions of Cox and Bridge through their control of the Corporate Defendants. (*Id*. ¶¶ 65-82).

Thus, Plaintiff has sufficiently alleged an injury by Cox and Bridge's conduct.

.As such, Plaintiff has sufficiently alleged all three elements required to pierce the corporate veil under Ohio law. Accordingly, Defendants are not entitled to judgment on the pleadings on this basis.

### C. Other Theories of Liability

Plaintiff also argues that the Complaint sufficiently pleads two additional forms of liability: a common enterprise and personal participation.

Under a common enterprise theory of liability, "[i]f the structure, organization, and pattern of a business venture reveal a 'common enterprise' or a 'maze' of integrated business entities, the FTC Act disregards corporateness." *Wash. Data Res.,* 856 F.Supp.2d at 1271. Courts generally find that a common enterprise exists "if, for example, businesses (1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing*." F.T.C. v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 637 (6th Cir. 2014) (quoting *F.T.C. v. Wash. Data Res.,* 856 F.Supp.2d 1247, 1273 (M.D. Fla. 2012)). This framework allows liability to attach across related entities that function as a single integrated operation. This, theory, however, is typically applied in the context of the FTC Act.

Under the personal participation theory, officers of a corporation may be liable "because of some wrongful or negligent act by such officer amounting to a breach of duty which resulted in injury." It requires "a breach of duty as contributed to, or helped bring about, the injury: that is to say, he must be a participant in the wrongful act." *Ohio ex rel. DeWine v. Muncy*, No. 3:15-CV-376, 2017 WL 1177617, at *4 (S.D. Ohio Mar. 30, 2017) (quoting *State ex rel. Dann v. Coen*, 2009-Ohio-4000, ¶ 30). Under this theory, a plaintiff is not required to pierce the corporate veil to hold individuals personally liable for their tortious acts. *State ex rel. DeWine*, 11th Dist. No. 2016-L-091, 2018-Ohio-3109, 104 N.E.3d 843, at ¶ 66.

As Defendants' Motion only raised the issue of piercing the corporate veil, and this Court finds Plaintiff sufficiently pled that theory, this Court need not reach the merits of the other theories of liability at this stage. Accordingly, this Court limits its analysis to the veil-piercing theory and expresses no opinion at this stage on the viability of the alternative theories of liability.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' Motion for Judgment on the Pleadings (ECF

No 115) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 29, 2025**

14